Franco v Hyatt Corp. (2020 NY Slip Op 07522)





Franco v Hyatt Corp.


2020 NY Slip Op 07522


Decided on December 15, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 15, 2020

Before: Gische, J.P., Mazzarelli, Moulton, González, JJ. 


Index No. 153152/14 Appeal No. 12422 Case No. 2019-3451 

[*1]Anthony Franco, Plaintiff-Appellant,
v
Hyatt Corporation Doing Business as Hyatt Times Square, et al., Defendants-Respondents.


The Law Office of Tamara M. Harris, New York (Tamara Harris of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, New York (Judy C. Selmeci of counsel), for respondents.



Order, Supreme Court, New York County (Manuel J. Mendez, J.), entered November 15, 2017, which granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion denied.
Defendants failed to establish that they were entitled to summary dismissal of plaintiff's quid pro quo sexual harassment and hostile work environment claims under either the State or the City Human Rights Laws. They also failed to show that they were entitled to summary dismissal of plaintiff's claim of retaliation.
The issue in a quid pro quo sexual harassment case brought under the State Human Rights Law is whether one or more employment decisions are linked to unwelcome sexual conduct. Sexual harassment occurs when such unwelcome sexual conduct is the basis, either explicitly or implicitly, for employment decisions affecting compensation or the terms, condition or privileges of employment (Matter of Father Belle Community Ctr v New York State Div. of Human Rights, 221 AD2d 44, 50 [4th Dept 1996], lv denied 89 NY2d 809 [1997]; see Suri v Grey Global Group, Inc., 164 AD3d 108 [1st Dept 2018], appeal dismissed, 32 NY3d 1138 [2019]). An employer can also be held liable for a hostile work environment when it encouraged or acquiesced in the unwelcome sexual conduct by an employee or subsequently condoned the offending behavior (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 311 [2004]; Sukram v Anjost Corp., 72 AD3d 491 [1st Dept 2010). Proof of condonation and acquiescence is not necessary where discriminatory conduct is perpetrated by a high-level managerial employee or someone sufficiently elevated in the employer's business organization to be viewed as its proxy (Randall v Tod-Nik Audiology, 270 AD2d 38 [1st Dept 2000]; Father Belle, 221 AD3d at 54-55). Under the City Human Rights Law, gender discrimination rests on the broader consideration of whether a plaintiff has been treated less well than other employees because of his/her gender (Suri, 164 AD3d at 114; Williams v New York City Hous. Auth., 61 AD3d 62, 78 [1st Dept 2009], lv denied 13 NY3d 702 [2009]). Whether brought under the State or the City Human Rights Law, the claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences (Ji Sun Jennifer Kim v Goldberg, Weperin, Finkel, Goldstein, LLP, 120 AD3d 18, 28 [1st Dept 2104]; Suri,164 AD3d at 114; PJI9:5, 9:5A)[FN1].
The gravamen of defendants' argument in favor of dismissal of the discrimination claims is that the offending actions plaintiff attributes to defendants are no more than petty slights or trivial inconveniences. We disagree. Although defendants deny that any of the acts claimed by plaintiff occurred, or that he made timely complaints about the offending behavior, the court is bound to consider the disputed facts in favor of the non-movant (Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012]). Disputed factual issues, especially those that [*2]require resolution of credibility issues, are generally unsuitable for summary adjudication (S. J. Capelin Assoc., v Globe Mfg. Corp., 34 NY2d 338, 341 [1974]).
Plaintiff testified that his supervisor, defendant Hall, made repeated sexual advances towards him, including reaching out to touch his face and holding his hand in an elevator while they were alone. She also initiated conversations that made him uncomfortable, telling him she had a "crush" on him, telling him she was single and twice inviting him to her home to repair "a hole" in her apartment. In one conversation, plaintiff claimed Hall said she had a tattoo, adding that "You have to undress me to see it." Plaintiff further testified that after he rebuffed Hall's sexual advances, she repeatedly brought him to the Human Resources manager's office to complain about his work product and that she solicited complaints about him from other coworkers. Plaintiff claims that he complained to HR about Hall's behavior in December. In January he was told that either he could resign or he would be fired. If believed, a trier of fact could find that these actions, especially when considered holistically, were unwelcome sexual conduct. As we have previously recognized, sexual advances are not always explicit, and the absence of a supervisor's direct pressure for sexual favors as a condition of employment does not negate indirect pressure or necessarily doom the claim (Suri, 164 AD3d at 115-16).
Defendants argue that plaintiff's separate claim of retaliation should be dismissed because the termination of his employment was for non-discriminatory reasons. Under the State Human Rights Law, a claim for retaliation requires that (1) the employee has engaged in a protected activity, (2) of which the employer was aware, (3) the employee suffered an adverse employment action, and (4) there is a causal connection between the protected activity and the adverse action (Forrest, 3 NY3d at 312-13; see Executive Law § 296[7]). Under the City Human Rights Law, the retaliatory act complained of need only be "reasonably likely to deter a person from engaging in protected activity" (Administrative Code of the City of NY § 8-107[7]). The burden then shifts to the defendant to show that it had legitimate, nonretaliatory reasons for its conduct. Where, as here, defendants are the moving party, they have the initial burden to establish prima facie why the claim should be dismissed (see Ji Sun Jennifer Kim, 120 AD3d at 22; Suri v Grey Global Group, Inc., 164 AD3d at 129-130). If the defendant offers legitimate, nonretaliatory reasons for its conduct, then the plaintiff must produce evidence showing that the defendant was motivated, at least in part, by an impermissible motive (see Bantamoi v St. Barnabas Hosp., 146 AD3d 420, 420 [1st Dept 2017]; Brightman v Prison Health Serv., Inc., 108 AD3d 739, 740 [2d Dept 2013]).
Defendants submitted evidence of complaints about plaintiff's brash demeanor, insensitive comments [*3]to coworkers, and poor work ethic, which demonstrate his difficulties following orders and getting along with his peers. By doing so, defendants satisfied their prima facie burden. In opposition, plaintiff relies on Hall's offensive conduct, including her telling him, in sum and substance, that if they could not be together then plaintiff could not work around Hall, and defendants' failure to adequately investigate his claims prior to his termination. Plaintiff's assertions raise disputed issues of fact about whether there was a mixed motive to terminate his employment (see Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 200 [1st Dept 2015]; see also Delrio v City of New York, 91 AD3d 900, 902 [2d Dept 2012]). Plaintiff's admission, that he was terminated due to an injury is not necessarily inconsistent with a mixed motive for his termination; instead it goes to issues of credibility to be decided by the trier of fact.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 15, 2020



Footnotes

Footnote 1:See Executive Law §296(1)(h), which sets forth an affirmative defense for conduct that a reasonable victim would consider petty slights or trivial inconveniences. Because it was passed in 2019, it does not apply to this case, which was commenced before the provision was enacted. Nonetheless, prior to its enactment, the law recognized that petty slights and trivial inconveniences were not actionable.